**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Kelly L. Stephens<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: March 06, 2024

Mr. Nicholas Bobb
Ms. Danielle M. Crane
Kegler Brown Hill & Ritter
65 E. State Street
Suite 1800
Columbus, OH 43215

Mr. Josh Sanford
650 S. Shackleford
Suite 110
Little Rock, AR 72211

          Re:  Case No. 23-3247, *Keith Jones v. Producers Service Corporation*
               Originating Case No. : 2:17-cv-01086

Dear Counsel,

  The court today announced its decision in the above-styled case.

  Enclosed is a copy of the court's published opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                                      Yours very truly,

                                      Kelly L. Stephens, Clerk


                                      Cathryn Lovely
                                      Deputy Clerk


cc:  Mr. Richard W. Nagel

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0047p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

KEITH JONES, individually and on behalf of all others similarly situated,

               *Plaintiff-Appellee*,

    *v.*

PRODUCERS SERVICE CORPORATION,

               *Defendant-Appellant*.

No. 23-3247

Appeal from the United States District Court for the Southern District of Ohio at Columbus.
No. 2:17-cv-01086—Edmund A. Sargus, Jr., District Judge.

Argued: October 26, 2023

Decided and Filed: March 6, 2024

Before: GIBBONS, BUSH and DAVIS, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Danielle Crane, KEGLER BROWN HILL & RITTER, Columbus, Ohio, for Appellant. Josh Sanford, SANFORD LAW FIRM, PLLC, Little Rock, Arkansas, for Appellee. **ON BRIEF:** Danielle Crane, Nicholas Bobb, KEGLER BROWN HILL & RITTER, Columbus, Ohio, for Appellant. Josh Sanford, SANFORD LAW FIRM, PLLC, Little Rock, Arkansas, for Appellee.

_____

**OPINION**

_____

JULIA SMITH GIBBONS, Circuit Judge. We confront a question of first impression in this Circuit: when, under § 207(f) of the FLSA, do an employee's job duties "necessitate" irregular hours?

No. 23-3247                     *Jones v. Producers Serv. Corp.*                     Page 2

I.

Producers Service Corporation ("PSC"), a hydraulic fracking and acidization services business, appeals the district court's order granting summary judgment to several of its current and former employees in their suit against the company for unpaid overtime compensation.[1] Plaintiffs are oilfield technicians who assemble and disassemble well-servicing equipment, operate that equipment, and "perform all ancillary services related to [PSC's] servicing operation[s]." DE 62-1, Decl. Leeper, Page ID 993, ¶ 10. They bring this action under the Fair Labor Standards Act ("FLSA" or the "Act"), the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), and the Ohio Prompt Pay Act ("OPPA"), charging that PSC fails to pay its oilfield technicians a lawful overtime premium for all hours worked over forty per week. PSC stakes its compliance with the FLSA — and by extension, the OMFWSA and OPPA[2] — on its contention that it pays its oilfield technicians in accordance with a *Belo* plan, a statutorily-authorized exception to the FLSA's overtime provisions that allows an employer to pay a fixed salary to employees who work fluctuating hours. 29 U.S.C. § 207(f).

On cross-motions for summary judgment, the district court found that PSC could not establish one of the four prerequisites to a valid *Belo* plan because its oilfield technicians work irregular schedules not by necessity, but instead due to factors within PSC's control — chiefly, the predetermined weekly schedules from which PSC forces plaintiffs to pick. The district court therefore granted plaintiffs' motion for summary judgment and denied PSC's.[3] The parties then

---

[1]PSC also appeals the district court's denial of PSC's own motion for summary judgment.

[2]Analysis of plaintiffs' FLSA claims proves coextensive with analysis of plaintiffs' claims under the OMFWSA and OPPA. As this court noted in *Douglas v. Argo-Tech Corp.*, 113 F.3d 67 (6th Cir. 1997), the relevant statutory language in the OMFWSA "parallels" that of the FLSA. *Id.* at 69 n.2. Moreover, plaintiffs allege a violation of the OPPA, which governs the timing of wage payments, only to the extent that the purportedly untimely wage payments are those to which plaintiffs are allegedly entitled by virtue of PSC's violations of the FLSA and OMFWSA.

[3]While the district court denied PSC's summary judgment motion in full, it granted plaintiffs' motion strictly on the issue of liability, holding the damages portion of the motion in abeyance pending additional briefing. The district court later partially denied and partially granted plaintiffs' Rule 56 motion as to damages, finding that the parties genuinely disputed portions of the calculation underlying plaintiffs' unpaid overtime. Although PSC appeals the consent judgment into which this latter order merged, *see Greene v. United States*, No. 21-5398, 2022 WL 13638916, at *2 (6th Cir. Sept. 13, 2022), PSC suggests in its reply brief that we need not address the subsequent order if we reverse the district court's initial summary judgment decision. We address this suggestion at the conclusion of this opinion, in footnote five.

No. 23-3247         *Jones v. Producers Serv. Corp.*         Page 3

reached a settlement agreement — given effect through the entry of a consent judgment — that provided for $400,000 in damages, costs and fees but maintained PSC's right to appeal the district court's summary judgment orders.

II.

We review the district court's grant and denial of summary judgment de novo. *Pearce v. Chrysler Grp. LLC Pension Plan*, 893 F.3d 339, 345 (6th Cir. 2018).  Summary judgment is appropriate only when no genuine issue of material fact remains, and the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986) (citing Fed. R. Civ. P. 56(a)).  When reviewing the record on summary judgment, we take all facts and reasonable factual inferences in the light most favorable to the nonmovant.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "[I]f the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then summary judgment will not lie.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

III.

A.

The FLSA requires that an employer pay a given employee "one and one-half times" that employee's regular rate of pay for each hour the employee works in excess of forty in a single workweek.  29 U.S.C. § 207(a)(1).  But, as an exception to this general rule, the Act permits an employer to implement an alternative compensation arrangement, known as a "*Belo* plan," in which the employer sets a guaranteed weekly wage for all hours worked in a week up to sixty.[4] *Id.* § 207(f).  Congress enacted the *Belo* plan exception "to provide stable salaries for employees whose work weeks fluctuate and who would otherwise face financial burdens from below-normal work weeks."  *Donovan v. Tierra Vista, Inc.*, 796 F.2d 1259, 1260 (10th Cir. 1986) (citing *A. H. Belo*, 316 U.S. at 635).  And the exception does not benefit wage earners alone, it simultaneously aids employers "by enabling [them] to anticipate and control in advance at least some part of [their] labor costs."  29 C.F.R. § 778.404.

---

[4]*Belo* plans draw their name from the Supreme Court case, *Walling v. A. H. Belo Corp.*, 316 U.S. 624 (1942), that in part inspired Congress' enactment of § 207(f).

No. 23-3247            *Jones v. Producers Serv. Corp.*            Page 4

To qualify its remuneration regime as a *Belo* plan, an employer must satisfy the four prerequisites set forth in the Act: (1) the subject employee must work "pursuant to a bona fide individual contract" or a collective bargaining agreement; (2) the employee's job duties must "necessitate irregular hours of work"; (3) the employee's contract must "specif[y] a regular rate of pay" for hours up to forty per week and a rate equal to one and one-half times that rate for hours over forty; and (4) the employee's contract must provide a weekly pay guarantee for no more than sixty hours, based on the specified rates. 29 U.S.C. § 207(f). Whether an employment contract "which purports to qualify an employee for exemption under [29 U.S.C. § 207(f)]" indeed amounts to a bona fide *Belo* plan "is a matter for determination by the courts." 29 C.F.R. § 778.414(a). The words used in an employee's employment agreement will yield to "the actual practice of the parties thereunder," *id.*, and the employer bears the burden of proving the presence of the four requirements set forth in § 207(f) at trial. *Usery v. Yates*, 565 F.2d 93, 97 (6th Cir. 1977) (citing *Mitchell v. Ky. Fin. Co.*, 359 U.S. 290, 291 (1959))*; see also Donovan v. Brown Equip. & Serv. Tools, Inc.*, 666 F.2d 148, 152–53 (5th Cir. 1982).

B.

Although PSC's compensation structure forms the locus of plaintiffs' suit, the fine details of how PSC remunerates its oilfield technicians are largely irrelevant at this stage. The district court granted summary judgment to plaintiffs (and denied it to PSC) on the basis of a single finding: that PSC could not convince a reasonable jury that its oilfield technicians' job duties necessitate irregular hours. If this finding was in error, the proper course is not to analyze the remaining *Belo* plan factors, but instead to reverse the district court and issue a general remand for further proceedings. *See Bluegrass Materials Co., LLC v. Freeman*, 54 F.4th 364, 373 (6th Cir. 2022) (general remand appropriate when reversing grant of summary judgment that produced a "domino effect" on "multiple, interrelated issues"); *Sutton v. St. Jude Med. S.C., Inc.*, 419 F.3d 568, 575 (6th Cir. 2005) ("As a general rule, appellate courts do not consider any issue not passed upon below.") (quoting *Dubuc v. Mich. Bd. of Law Exam'rs*, 342 F.3d 610, 620 (6th Cir. 2003)). We therefore focus our attention on the same question the district court asked: whether plaintiffs' job duties require irregular hours. 29 U.S.C. § 207(f).

At the outset, the parties make this inquiry somewhat simpler: they agree that PSC's oilfield technicians maintain "irregular" hours. Thus, we need only answer the following: whether the irregular hours plaintiffs work are "necessitate[d]" by their job duties. 29 U.S.C. § 207(f).

Under what circumstances an employee's duties "necessitate" irregular hours for purposes of § 207(f) of the FLSA is a question of first impression in this Circuit. And at first blush, the plain language of the Act might suggest that *any* irregular hours to which an employer subjects his employee are "necessitate[d]" by the employee's duties, since the ordinary workplace hierarchy instructs that an employee's duties include heeding the direction of his or her employer. *See United States ex rel. Felten v. William Beaumont Hosp.*, 993 F.3d 428, 431 (6th Cir. 2021) ("We usually interpret a statute according to its plain meaning, without inquiry into its purpose.").

But this rather simplistic view of § 207(f) accords with none of the extra-statutory sources that help inform our understanding of the *Belo* plan exception, which we note was itself born out of the Supreme Court's judicial "gloss" on the FLSA. *McComb v. Roig*, 181 F.2d 726, 727–28 (1st Cir. 1950); *see also Brown Equip. & Serv. Tools*, 666 F.2d at 152–53 (discussing § 207(f)'s origins). First, we consider the Supreme Court decisions that served as prologue to Congress's adoption of what is now § 207(f): *Walling v. A. H. Belo Corp.*, 316 U.S. 624 (1942), and *Walling v. Halliburton Oil Well Cementing Co.*, 331 U.S. 17 (1947). In both cases, the employees at issue worked "substantially fewer hours as well as substantially more than the statutory forty-hour standard because of the unpredictable irregularity inherent in the nature of their duties." *Foremost Dairies, Inc. v. Wirtz*, 381 F.2d 653, 656 n.5 (5th Cir. 1967). The newspaper employees at issue in *Belo* worked "a few hours a day" during slow periods and up to twelve hours a day "[i]n times of news activity." *Fleming v. A. H. Belo Corp.*, 121 F.2d 207, 215 (5th Cir. 1941) (Sibley, J., concurring), *aff'd sub nom. A. H. Belo*, 316 U.S. 624. The oil well servicing employees at issue in *Halliburton* worked "more than 100 hours" in some weeks and "less than 30" in others. 331 U.S. at 21. In neither case did the Court confront employees whose irregular schedules were "necessitated" by their job duties in an all-encompassing sense, which would capture irregular hours dictated by workplace supervisors. Instead, the Court

Case: 2:17-cv-01086-EAS-KAJ Doc #: 136 Filed: 03/06/24 Page: 7 of 12 PAGEID #: 1441

No. 23-3247                    *Jones v. Producers Serv. Corp.*                    Page 6

contemplated employees whose irregular hours were "necessitated" by their job duties in a narrower sense, contingent upon a meaning of "duties" that speaks to the nature of the employees' occupation rather than the mercurial preferences of their boss.

For another interpretive lodestar, the "[Department of Labor]'s interpretative regulations under the FLSA 'constitute a body of experience and informed judgment to which courts may properly resort for guidance.'" *Justice v. Metro. Gov't of Nashville*, 4 F.3d 1387, 1393 (6th Cir. 1993) (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)) (cleaned up). And here, the Department's interpretation of "necessitate" provides a more nuanced understanding of the § 207(f) exception than a plain reading would dictate:

> Even if an employee does in fact work a variable workweek, the question must still be asked whether his duties necessitate irregular hours of work. The subsection is not designed to apply in a situation where the hours of work vary from week to week at the discretion of the employer or the employee, nor to a situation where the employee works an irregular number of hours according to a predetermined schedule. The nature of the employee's duties must be such that neither he nor his employer can either control or anticipate with any degree of certainty the number of hours he must work from week to week.

29 C.F.R. § 778.405.

For a third source of guidance, we note that the Department's view aligns with both of the principal purposes underlying the *Belo* plan exception — providing employees in naturally volatile industries with "the security of a regular weekly income," and offering their employers a more predictable payroll. *A. H. Belo*, 316 U.S. at 633 (payroll), 635 (regular income); *see also* 29 C.F.R. § 778.404 (discussing the exception's purposes). Indeed, if irregular hours were sufficient irrespective of their cause, then employers could "effectively manipulate 'irregularity,'" scheduling days off to create the façade of irregular hours and then implementing a *Belo* plan that deflated their employees' wages. *See Donovan v. Welex, Div. of the Halliburton Corp.*, 550 F. Supp. 855, 858 (S.D. Tex. 1982); *see also A. H. Belo*, 316 U.S. at 637–39 (Reed, J., dissenting) (describing the risk of wage-deflationary employment contracts created by the majority holding). Moreover, if the employee's forthcoming irregular hours are known to the employer in advance, then the employer finds no need for the payroll predictability that a *Belo* plan provides — he already possesses it. *See Harp v. Cont'l/Moss-Gordin Gin Co.*, 259 F. Supp.

No. 23-3247 *Jones v. Producers Serv. Corp.* Page 7

198 (M.D. Ala. 1966) (finding employer's purported *Belo* plan invalid where "the defendant-employer . . . seemed to have control over the number of hours which each of these plaintiffs would work each week," as it "necessarily follow[ed] that the nature of the duties of these plaintiff-employees was not such that the employer could not control, or anticipate with any degree of certainty, the number of hours they were required to work from week to week"), *aff'd sub nom. Cont'l/Moss-Gordin Gin Inc. v. Harp*, 386 F.2d 995 (5th Cir. 1967) (per curiam).

Finally, we look to our sister circuits, as well as the district courts, that have confronted this same question.  At least two circuit courts of appeal have relied on § 207(f)'s judicial roots and interpretive regulations to conclude that "necessitate" suggests more than mere cause-and-effect between an employee's schedule — presumably dictated to him by his employer — and the hours that he works.  *See Brown Equip. & Serv. Tools*, 666 F.2d at 154 (finding § 207(f) inapplicable where employees' irregular schedules owed to "holidays, vacations, illnesses, and other personal reasons" rather than "a shortage or unavailability of work"); *Tierra Vista*, 796 F.2d at 1260 (adopting the Fifth Circuit's interpretation).  And district courts widely apply the interpretation set forth in the DOL's interpretive regulations.  *See, e.g.*, *Boll v. Fed. Rsrv. Bank of St. Louis*, 365 F. Supp. 637 (E.D. Mo. 1973) (applying 29 C.F.R. § 778.405)*, aff'd*, 497 F.2d 335 (8th Cir. 1974); *Mascol v. E & L Transp., Inc.*, 387 F. Supp. 2d 87, 104 (E.D.N.Y. 2005) (same); *Szabo v. Muncy Indus., LLC*, 661 F. Supp. 3d 337, 346 (M.D. Pa. 2023) (same).

In summary, we find that the available interpretive sources point in a single direction:  for purposes of 29 U.S.C. § 207(f), an employee's job duties "necessitate" irregular hours when the inherent nature of the employee's work — i.e., the inalienable qualities of his industry, profession, or specific position — place the employee's hours beyond either his or his employer's power to control or predict.

C.

With the benefit of the foregoing legal principles, we can answer the dispositive question in this appeal:  whether PSC has produced evidence from which a reasonable jury could conclude that its oilfield technicians' job duties "necessitate irregular hours of work." 29 U.S.C. § 207(f).

As noted previously, the parties agree that PSC's oilfield technicians work widely varied hours from week to week — upwards of eighty in some weeks and fewer than twenty in others. Plaintiffs attribute this week-to-week irregularity to the two preset work calendars from which PSC forces its oilfield technicians to choose. Under one schedule, technicians work fourteen consecutive days before taking a week off. Under the other, technicians work a seven-on, four-off, then seven-on and three-off schedule. Irrespective of their choice, technicians work fourteen days in a given twenty-one-day period of employment.

These scheduling options result from two attributes of PSC's industry. First, fracking and acidization services at oil and gas wells are often around-the-clock operations. PSC's oilfield technicians thus work in alternating twelve-hour shifts (i.e., twelve hours on, twelve hours off). Second, oil and gas wells often sit in remote locations, requiring that oilfield technicians travel long distances to reach their worksite. PSC's technicians therefore typically reside in hotels or "man camp[s]" while on the job. DE 60, Dep. Parks, Page ID 813, 20:18–21:7. In light of these realities, PSC offers its oilfield technicians their choice between the two schedules to, in the words of PSC's vice-president of finance and administration, "give [the technicians] some options as far as their ability to be at home versus being out for two solid weeks." *Id.* at 813, 18:15–17. Plaintiffs maintain that most, if not all, of the irregularity in their weekly working hours derives from their prearranged time off.

Although it acknowledges its scheduling practices, PSC offers a competing explanation. It contends that it implemented its *Belo* plan for precisely the purpose the Supreme Court identified in the *Belo* case — guaranteeing its oilfield technicians a consistent wage in an otherwise inconsistent industry. PSC maintains that just as the energy industry overall is cyclical, so too is the fracking and acidization services business that PSC operates. Its *Belo* plan, PSC argues, helps it retain talent through up and down cycles.

As evidence that volatile demand drives the irregularity in its technicians' weekly hours, PSC identifies three items in the record. First, PSC cites the sworn declaration of Frank Leeper, PSC's President. Leeper asserts that in his experience with PSC, "fluctuations in the energy industry" drive irregular work and pay for oilfield workers. DE 62-1, Decl. Leeper, Page ID 993, ¶ 14. Second, PSC notes that several plaintiffs responded affirmatively when asked if a lack

Case: 2:17-cv-01086-EAS-KAJ Doc #: 136 Filed: 03/06/24 Page: 10 of 12  PAGEID #: 1444

No. 23-3247            *Jones v. Producers Serv. Corp.*            Page 9

of work, or an industry downturn, accounted for the weeks in their timesheet records that evidence active employment, but few if any working hours. And third, PSC points to plaintiffs' timesheet records themselves, arguing that Plaintiffs cannot account for numerous weeks during which they were employed, not on scheduled time off, and yet performed little work.

We find that PSC has presented evidence creating a genuine dispute of fact as to the reason behind plaintiffs' irregular schedules. This conclusion stems from two observations. First, although plaintiffs rightly point out that many of the weeks during which they worked fewer than forty hours are weeks in which they enjoyed scheduled time off, PSC correctly observes that several plaintiffs worked well under forty hours during weeks in which they took little or no scheduled time off. Put differently, the timesheet evidence is a decidedly mixed bag. On the one hand, the available timesheet records for plaintiffs DeAngelo Adams, Michael Bogner and Jesus Casarez largely support plaintiffs' contentions: of the catalogued weeks during which they worked fewer than forty hours, Adams took scheduled time off in 94% (15/16) of those weeks, Bogner took time off in 92% (22/24) of those weeks, and Casarez took time off in 100% of those weeks (2/2). On the other hand, the available timesheet records for plaintiffs Nathaniel Jones, Keith Jones, and Casey Foster tell a different story: of the catalogued weeks during which they worked fewer than forty hours, Nathaniel Jones enjoyed scheduled time off in only 23% (3/13) of those weeks, Keith Jones took time off in only 28% (2/7) of those weeks, and Foster took time off in only 58% (7/12) of those weeks.

Second, PSC provides a plausible and supportable explanation for the weeks that plaintiffs worked fewer than forty hours despite taking no time off: swings in demand for its services. Given Frank Leeper's position as PSC's president — presumably an individual intimately familiar with PSC's operations and finances — a reasonable jury could believe his contention that plaintiffs' irregular hours, where otherwise unexplained by scheduled time off, resulted from fluctuations in demand. And indeed, several plaintiffs stated that their irregular hours at times stemmed from insufficient work. Although plaintiffs argue that this testimony was vague or elicited by leading questions, we must not weigh the evidence and resolve these arguments at the summary judgment stage. *Anderson*, 477 U.S. at 249. Whatever the strength of PSC's broader argument, PSC's facts — viewed in the light most favorable to PSC — present a

No. 23-3247 *Jones v. Producers Serv. Corp.* Page 10

question for the jury.  Summary judgment, at least so far as it concerns the cause of plaintiffs' irregular hours, was therefore improper.

### IV.

For the foregoing reasons, we reverse the district court's grant of summary judgment to plaintiffs as to liability, affirm the district court's denial of summary judgment to PSC, vacate the district court's consent judgment, and remand the suit for further proceedings not inconsistent with this opinion.[5]

---

[5] In its Reply brief, PSC states that "[i]f this Court determines that the District Court's November 14, 2019 Opinion and Order . . . was improperly decided and remands for further proceedings, it need never reach" the district court's summary judgment order on damages.  CA6 R. 20, Reply Br., at 6.  Because we grant PSC its requested relief on the district court's first summary judgment order, we treat this statement as a contingent withdrawal of its appeal of the district court's second summary judgment order.  We therefore decline to address the later order.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 23-3247

KEITH JONES, individually and on behalf of all others similarly situated,

    Plaintiff - Appellee,

    v.

PRODUCERS SERVICE CORPORATION,

    Defendant - Appellant.

**FILED**
Mar 06, 2024
KELLY L. STEPHENS, Clerk

Before:  GIBBONS, BUSH, and DAVIS, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Southern District of Ohio at Columbus.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED IN PART, REVERSED IN PART, VACATED IN PART, and REMANDED for further proceedings consistent with the opinion of this court.

**ENTERED BY ORDER OF THE COURT**

Kelly L. Stephens, Clerk